# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2441 | **DATE** | 5/8/2001 |
| **CASE TITLE** | Beneficial Franchise Company, Inc. vs. Bank One, N.A., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion to compel [doc.# 104-1] is granted in part and denied in part. The documents to be produced pursuant to this ruling on the motion to compel shall be produced on or before 05/21/01. Plaintiff's motion to compel discovery relating to cross-collection [doc.# 106-1] is granted in part, to the extent that the Court will require further supplementation to Interrogatory No. 13. The supplemental responses shall be served on or before 05/21/01. In all other respects, the motion to compel discovery relating to cross-collection is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| ✓ | Notices mailed by judge's staff. | | | MAY 0 9 2001 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | 125 |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| ✓ | Copy to judge/magistrate judge. | | | | | |
| | | | | 5/8/2001 | | |
| | JJK courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice JJK mailing deputy initials | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BENEFICIAL FRANCHISE COMPANY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 00 C 2441 |
| | ) | |
| BANK ONE, N.A., FIRST SECURITY BANK, | ) | District Judge Holderman |
| REPUBLIC BANK & TRUST, RIVER CITY | ) | |
| BANK and SANTA BARBARA BANK & | ) | Magistrate Judge Schenkier |
| TRUST, | ) | |
| | ) | |
| Defendants. | ) | |

*DOCKETED*
*MAY 0 9 2001*

### MEMORANDUM OPINION AND ORDER

Plaintiff, Beneficial Franchise Company, Inc. ("Beneficial"), has brought this action alleging that each of the defendants is willfully infringing three United States patents owned by Beneficial relating to the systems, methods and implementation of two tax products, which are known as refund anticipation loans ("RALs") and refund anticipation checks ("RACs"). The patents in suit are U.S. Patent Nos. 4,890,228, issued on December 26, 1989 ("the '228 patent"); U.S. Patent No. 5,193,057, issued on March 9, 1993 ("the '057 patent"); and U.S. Patent No. 5,963,921, issued on October 5, 1999 ("the '921 patent"). Defendants have asserted a variety of defenses, including the defense that Beneficial's claims are barred by equitable estoppel. Under the scheduling order set by the district judge on October 19, 2000, the defendants are required to disclose by July 31, 2001 whether they also will be asserting reliance on the advice of counsel as a defense to the assertion that any infringement was willful.

Presently pending before the Court are two motions related to disputes arising from the defendants' assertion of privilege in response to certain of Beneficial's discovery requests.

The first dispute involves the scope of production that defendant Bank One must make as a result of its decision to produce otherwise privileged materials from the files of an attorney, Donald Huff. Mr. Huff's file contains opinions concerning the validity and enforceability of the '228 patent in 1989 and related materials. Beneficial claims that because Bank One has indicated that the Huff opinions formed a basis for its equitable estoppel defense, Bank One has waived the attorney-client and work product privileges as to all documents relevant to the equitable estoppel defense, irrespective of when they were created or whether they were created by Bank One's trial counsel. Bank One disagrees with the scope of waiver asserted by Beneficial. Bank One concedes that it is required to produce all otherwise privileged documents relating to the subject matter of the Huff opinions that predate January 7, 2000. However, Bank One asserts that it should not be required to produce any documents generated on or after January 7, 2000, which is the date that Beneficial sent Bank One a letter offering a license on the '057 and '921 patents (Defs. Resp., Ex. 7). Implicit in Bank One's position is the proposition that equitable estoppel based on Beneficial's alleged failure to enforce would not be asserted for actions occurring after that date, because any subsequent reliance on Beneficial's failure to enforce its rights would be unreasonable in light of the license offer. But, Bank One has not squarely stated that it will not assert equitable estoppel for actions on or after January 7, 2000. As a result of this dispute, Beneficial has filed a motion to compel production of documents (doc. # 104).

The second dispute initially arose between Beneficial and Bank One, but now involves all parties in the case. This dispute involves documents relating to what are known as "cross-collection agreements." Under a cross-collection agreement, one bank will agree to collect from a customer amounts that the customer may owe to another bank due to a delinquent RAL or RAC issued by the

other bank during a previous tax season. In this fashion, the banks attempt to minimize the losses they may suffer on delinquent loans, by enlisting the assistance of other banks which the customer may patronize in future tax seasons. At various times prior to this suit, Beneficial entered into cross-collection agreements with various defendants, and the defendants all assert those agreements as a basis for their equitable estoppel defenses. After suit was filed in this case, the defendants and Beneficial entered into cross-collection agreements covering the 2000 tax season, but on terms that differed from the previous cross-collection agreements (and that Beneficial deemed less advantageous to itself). Beneficial seeks production of all documents which relate to the cross-collection agreements; in addition, Beneficial seeks a declaration that certain conversations among the defendants (including conversations strictly between trial counsel for the defendants) regarding the cross-collection agreements and documents relating to those conversations are not privileged. The defendants disagree with the scope of production urged by Beneficial, which has led to Beneficial's motion to compel production of documents relating to cross-collection agreements (doc. # 106).

For the reasons set forth below, each of Beneficial's motions (doc. ## 104, 106) is granted in part and denied in part. The Court begins with a discussion of the governing legal principles. We will then turn to an analysis of each of the motions.

## I.

The attorney-client privilege serves the important policy of fostering "full and frank communication between attorneys and their clients and thereby promote[s] broader public interest in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383,

389 (1981); *see also United States v. Frederick*, 182 F.3d 448, 500 (7ᵗʰ Cir. 1999) ("the attorney-client privilege is intended to encourage people who find themselves involved in actual or potential legal disputes to be candid with any lawyer they retain to advise them"). But these benefits of the attorney-client privilege come at a substantial cost; "when the privilege shelters important knowledge, accuracy declines. Litigants may use secrecy to cover up machinations, to get around the law instead of complying with it. Secrecy is useful to the extent it facilitates the candor necessary to obtain legal advice. The privilege extends no further." *In re Matter of Feldberg*, 862 F.2d 622, 627 (7ᵗʰ Cir. 1998). As a result, the Seventh Circuit has held that the privilege must be "strictly confined within the narrowest possible limits." *United States v. Lawless*, 709 F.2d 485, 487 (7ᵗʰ Cir. 1983) (citation omitted).

The work-product doctrine, like the attorney-client privilege, provides an exception to the otherwise liberal discovery rules. A fundamental purpose of the work product doctrine is to "avoid deterring a lawyer's committing his thoughts to paper." *Frederick*, 182 F.3d at 500. The doctrine applies to protect "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).

Both the attorney-client and work-product privileges may be waived. Perhaps the most common instance of waiver is where an otherwise privileged communication is disclosed to a third party outside the scope of the privilege. *In re Aircrash Disaster in Sioux City, Iowa*, 133 F.R.D. 515, 518 (N.D. Ill. 1990). In *In re Aircrash Disaster*, the district court noted, however, that "most courts have held . . . that simply because a final product is disclosed to the public (or a third person), an underlying privilege attaching to drafts of the final product is not destroyed." 133 F.R.D. at 518.

4

And, disclosures to a third party do not waive the privilege where the parties are linked by a common interest:

> Where two or more persons jointly consult an attorney concerning a mutual concern, "their confidential communications with the attorney, although known to each other, will of course be privileged in the controversy of either or both of the clients with the outside world. . . ." (citations omitted). Moreover, the joint defense privilege cannot be waived without the consent of all parties to the defense, except in the situation where one of the joint defendants becomes an adverse party in a litigation. (Citation omitted).

*Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, 90 F.R.D. 21, 29 (N.D. Ill. 1980). While often arising in the context of a joint defense, the common interest doctrine applies to any parties who have a "common interest" in current or potential litigation, either as actual or potential plaintiffs or defendants. *Russell v. General Electric Co.*, 149 F.R.D. 578, 580 (N.D. Ill. 1993); *see also United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997). To maintain the privilege, the common interest must relate to a litigation interest, and not merely a common business interest. *See, e.g., Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 689 F. Supp. 841, 845 (N.D. Ill. 1988).

Another instance in which the privilege may be waived is "when the client asserts claims or defenses that put his attorneys' advice at issue in the litigation." *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n.1 (7th Cir. 1995). One example of placing an attorney's advice at issue is when a party seeks to defend against the claim of willful patent infringement by asserting that the party relied on advice of counsel, and thus was not acting willfully. *See e.g., Soloman v. Kimberly-Clark Corp.*, No. 98 C 7598, 1999 WL 89570, * 1 (N.D. Ill., Feb. 12,1999) (assertion of advice of counsel defense results in waiver of the attorney-client privilege and attorney work product protection) (citing cases); *see generally, Dawson v. New York Life Ins. Co.*, 901 F. Supp. 1362, 1369-70 (assertion of advice of counsel defense to claim to violation of FLSA resulted in waiver of privilege

as to certain discovery). A party also may put at issue an attorney's advice in the course of asserting the affirmative defense of equitable estoppel. *See, e.g., Southwire Co. v. Essex Group, Inc.*, 570 F. Supp. 643, 650 (N.D. Ill. 1983).

In determining when the attorney's advice is put at issue, the Court adopts the approach set forth in *Rhone-Poulenc Rorer, Inc. v. Home Indemnity Co.*, 32 F.3d 851 (3d Cir. 1994), which discussed in detail the scope of the "at issue" waiver doctrine. In *Rhone-Poulenc*, the Third Circuit specifically rejected the proposition that a party impliedly waives the privilege merely by asserting a defense that would make an attorney's advice relevant. Rather, the Third Circuit held that "[t]he advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney-client communication." 32 F.3d at 863. In explaining its ruling, the *Rhone-Poulenc* court used the example of a patent case in which a defendant denies the charge of willful infringement. The Court explained that while the advice of the alleged infringer's lawyer may be "relevant to the question of whether the infringer acted with a willful state of mind, . . . the advice of the infringer's counsel is not placed in issue, and the privilege is not waived, unless the infringer seeks to limit its liability by describing that advice and by asserting that he relied on that advice." *Id.*

*Rhone-Poulenc* reflects an effort to strike a balance between the principle that waivers of the attorney-client privilege are to be narrowly construed, *see, e.g., Katz v. AT&T*, 191 F.R.D. 433, 440 (E.D. Pa. 2000), and the principle that a party should not be able to selectively disclose privileged information that it believes works to that party's advantage, while concealing the rest. *McLaughlin v. Lunde Truck Sales*, 714 F. Supp. 916, 918 (N.D. Ill. 1989) ("the attorney/client privilege may not be manipulated to the advantage of the party asserting the privilege"). This Court previously found

that the balance struck by *Rhone-Poulenc* properly accommodates these competing interests. *Hucko v. City of Oak Forest*, 185 F.R.D. 526, 529 (N.D. Ill. 1999) (finding that a plaintiff does not place privileged psychotherapist-patient communications at issue merely by asserting a claim for emotional pain and suffering damages). As did the *Rhone-Poulenc* court, we do not believe that merely asserting a defense or a claim is sufficient, without more, to waive the privilege. Were it otherwise, then any party asserting a claim or defense on which it bears the burden of proof would be stripped of its privilege and left with the draconian choice of abandoning its claim and/or defense or pursuing and protecting its privilege. The impracticality of such a rule is revealed when viewed in reverse: waiver of the privilege would apply not only to assertions of affirmative defenses but also by parity of reasoning to claims raised by a plaintiff that require proof of a mental state – such as, a fraudulent inducement claim. Such a rule would exact too stiff a price for the assertion of commonly-pled claims and defenses.

On the other hand, the fairness equation tips in the other direction when a party chooses to utilize privileged information to advance a claim or defense. That is the rule adopted by *Rhone-Poulenc*, which the Seventh Circuit has cited with approval. *Garcia*, 58 F.3d at 1175 n.1. And that is the rule this Court will apply in determining whether privileged documents and communications have been placed at issue in connection with the assertion of the equitable estoppel defense.[1]

---

[1]The Court notes that in the lead case in this district on the waiver of privilege in connection with the assertion of an equitable estoppel case, *Southwire*, the district court did not hold that the mere assertion of the estoppel defense created a waiver: rather, the Court held that the assertion of that defense, "coupled with [defendant's] use of its patent counsel's opinions to prove reliance in connection with another issue in the case, has waived the attorney-client privilege and put those opinions and the question of its actual reliance in issue." 570 F. Supp. at 650. *See also McLaughlin v. Lundy Truck Sales, Inc.*, 714 F. Supp. 916 (N.D. Ill. 1989) (in a suit under the Fair Labor Standards Act in which the defendant asserted a good faith defense, the Court held that defendant placed an attorney's advice at issue by offering as evidence opposing summary judgment the affidavit of the attorney). The Court is mindful that there are decisions within this district that find a waiver of privilege is created merely by the assertion of the estoppel defense. *See, e.g., THK America, Inc. v. NSK, Ltd.*, 157 F.R.D. 637, 649-50 (N.D. Ill. 1994). To the extent that other decisions in this district find that the mere assertion of the estoppel defense constitutes waiver, the Court believes that the *Rhone-Poulenc*

When the privilege is waived, the question as to the scope of the waiver invariably arises. Certainly, the waiver extends beyond the particular opinions or communications that the party chooses to disclose. Having opened the door to certain privileged information in an effort to advance its cause, as a matter of fairness a party must disclose other privileged materials involving the subject matter of the disclosed communications. That rule prohibits a party from "disclos[ing] opinions which support its position, and simultaneously conceal[ing] those [opinions] which are adverse." *Thermos Co. v. Starbucks Corp.*, 96 C 3833, 1998 WL 781120, at * 1 (N.D. Ill. 1998) (*quoting Saint-Gobain/Norton Industrial Ceramics Corp. v. General Electric Co.*, 884 F. Supp. 31, 33 (D. Mass. 1995)). As a result, a party must produce not only other communications and opinions of the same attorney, but also privileged information from other counsel involving the same subject. *Id.*

In this case, there is also a dispute concerning the time scope of any waiver. Beneficial argues that the waiver extends to all communications concerning the subject matter of the Huff opinions, including privileged communications with trial counsel generated after April 21, 2000, the date on which this suit was filed. For its part, Bank One asserts that the waiver is limited in time scope to those documents generated prior to January 7, 2000, which is the date that Beneficial offered a license on two of the patents in suit. The Court does not agree with either position.

In *Dunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.*, 994 F. Supp. 1202, 1205-06 (C.D. Cal. 1998), the court explained why unfettered access to trial counsel's post-suit work product would be unduly intrusive:

> Although the Court recognizes plaintiff's valid interest in discovering all work-product related to the subject matter of the asserted defense, that

---

the *Rhone-Poulenc* decision, which has been cited with favor by the Seventh Circuit on the waiver point, provides the better approach.

> interest must be balanced with defendants' countervailing interest in protecting their work product. Although defendants have waived work-product protection by asserting the advice of counsel defense, that waiver is not absolute . . . [f]ollowing the filing of the lawsuit, defense counsel is engaged in critical trial preparation, often including analysis of the weakness of their client's case. Such analysis, while likely related to the subject matter of the asserted defense, is fundamentally different from a similar pre-litigation analysis. In comparison to work product produced prior to the filing of the lawsuit, litigation-related work product deserves greater protection.

Based on this observation, the court in *Dunhall* thus held that "[o]nce the lawsuit is filed, the waiver of work-product protection ends." 994 F. Supp. at 1206. In *Starbucks Corp.*, the court attempted to accommodate the same concerns expressed in *Dunhall* in a different fashion, by allowing the waiver to extend only to documents prepared by trial counsel which were communicated to the defendants, and which contained "conclusions that contradict or cast doubt" on the disclosed opinions. 1998 WL 781120, at * 5.

The Court believes that the approach in *Starbucks Corp.* is preferable to the "bright line" cutoff used in *Dunhall* based on the date that suit was filed. The overriding principle is one of fairness. When a party chooses to inject into the case attorney opinions, fairness is served by allowing the opposing party to have access to documents casting doubt or contradicting those opinions – even if prepared by trial counsel after suit was commenced. Moreover, we believe that that is consistent with what a party's expectation should be if he or she chooses to inject attorney advice into the case – a party cannot fairly expect to offer only the privileged information which he or she deems helpful, and to withhold the rest.

Thus, we will apply the *Starbucks Corp.* approach to documents and communications by trial counsel after suit was commenced, with one revision. In *Starbucks Corp.*, the Court limited the

disclosure to conclusions that contradict or cast doubt on the disclosed opinions, but only if they were communicated to the defendants. In *Dunhall*, the Court persuasively explained why such materials should be disclosed even if there is nothing in the attorney files indicating that they were communicated to the client:

> "[C]ertainly it would not be rational to assume that everything in counsel's files reach the client, or that counsel communicated to the client all of what he or she really thought, but it would be comparably irrational to assume that there could be no relationship between what counsel really thought (as reflected in her private papers) and what she in fact communicated to her client. In this important sense, evidence about what really was in the lawyer's mind could be quite relevant to the issue of what was really in the client's mind.

994 F. Supp. at 1205 (quoting *Electro Scientific Industries, Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 545 (N.D. Cal. 1997). In substance, the *Dunhall* court reasoned that it would be fair to examine the client about what was in the attorney's files for the purposes of ascertaining whether, even if the negative documents were not disclosed to the client, the information in the documents had been revealed. This Court agrees. Not all information conveyed to a client is neatly reflected in a transmittal letter or in a memorandum specifically directed to the client. The practical reality is that if negative information was important enough to reduce to a memorandum, there is a reasonable possibility that the information was conveyed in some form or fashion to the client. Accordingly, in applying the standard in *Starbucks Corp.*, we will modify it to extend the waiver to documents in trial counsel's file that contradict or cast doubt on the opinions that were revealed, irrespective of whether the documents indicate on their face that they were conveyed to the client.

## II.

In light of these principles, we turn first to Beneficial's motion to compel production of documents related to the Huff opinions. There are three categories of documents at issue in this motion, which we address in turn.

*First,* although there appears to be no dispute that the documents from Mr. Huff's file that predate January 7, 2000 have been produced, Beneficial complains that Bank One has failed to produce other documents relating to the disclosed Huff opinions that are in Bank One's files and predate January 7, 2000. Bank One acknowledges that it is obligated to produce those documents (Bank One Mem. at 14), but claims that it has not done so because of a fear that there would be a broader waiver of the attorney-client privilege by voluntary production than if the documents were produced subject to an order to compel. The Court finds that the bickering between Beneficial and Bank One on this point is needless. The scope of the waiver was fixed by Bank One's assertion of the equitable estoppel defense, coupled with its decision to disclose from Mr. Huff's files the various opinions and related documents. To use the language of *Southwire*, Bank One's actions effectively "put those opinions and the question of [Bank One's] actual reliance in issue[,]" and thus require production of documents relating to "the entire course of [Bank One's] validity/infringement investigation[.]" *Southwire*, 570 F. Supp. at 650. Whether those documents are produced voluntarily or pursuant to court order does not affect the scope of the waiver of the privilege. Thus, the Court agrees that Bank One must produce documents in its files, generated prior to January 7, 2000, relating to the subject matter of the disclosed Huff opinions.

*Second*, Beneficial argues that it is entitled to documents from the Huff files or Bank One's files, generated on or after January 7, 2000, but before the filing of the lawsuit on April 21, 2000.

11

The Court agrees. The Court finds no principled basis to exclude from the scope of the waiver documents created on or after January 7, 2000. The implicit premise of Bank One's proposed cutoff at that date is that there would not be an equitable estoppel defense for its conduct after that date, in light of the letter by Beneficial indicating that it would permit use of the '921 and '057 patents only upon a license. *See, e.g.*, 1/7/00 letter from Peck to Galvin (Def.'s Resp. Ex. 7). However, Bank One has not squarely abandoned the equitable estoppel defense for conduct on or after January 7, 2000. And even if Bank One made such a representation, documents generated on or after January 7, 2000 relating to the subject matter discussed in the Huff opinions still could shed light on what role, if any, the Huff opinion had in Bank One's conduct. Those documents, no less than documents generated prior to January 7, 2000, would be "helpful in determining whether [Bank One] relied on [Beneficial] or rather on its own patent lawyers' advice" and are within the scope of the waiver. *Southwire*, 570 F. Supp. at 650.

*Third*, Beneficial argues that it is also entitled to documents generated after the filing of this lawsuit that relate to the subject matter of the Huff opinions, even if they were generated by trial counsel. On this point, the Court agrees with Beneficial in part. As for any documents created by lawyers other than trial counsel, the Court finds no reason not to require their production as within the scope of the waiver, without limitation. With respect to such documents that have been prepared by trial counsel, for the reasons described above, the Court finds that those documents must be produced only to the extent that they contradict or cast doubt on the Huff opinions. For the reasons stated above, such documents must be produced irrespective of whether, on their face, they indicate that they were transmitted to Bank One.

## III.

Beneficial's motion in connection with the cross-collection agreements is based on the defendants' responses to two interrogatories, the text of which we set forth in full below:

> INTERROGATORY NO. 13: Identify the date, time, place and participants in (including attorneys) all conversations among the defendants and/or their attorneys concerning any collection agreement(s) entered into by any of the defendants with Beneficial Household Bank, f.s.b., and/or Beneficial National Bank.

> INTERROGATORY NO. 14: Describe in detail the substance of the conversations referred to in the previous interrogatory.

On February 21, 2001, the Court ordered each of the defendants to supplement their responses to these interrogatories, and to provide a privilege log for documents or conversations in which privilege was asserted. In response, the defendants identified various responsive conversations and documents relating to those conversations, and asserted privilege as to the great majority of them. Beneficial attacks those privilege assertions on a variety of grounds, which we address below.

## A.

One category of conversations logged by the defendants involve discussions between representatives of the various defendants outside the presence of trial counsel, and documents pertaining to those conversations. These conversations took place on June 30, 2000, October 11 or 12, 2000 and February 2001. The June 2000 conversation involved a representative of Bank One discussing with representatives of Santa Barbara and Republic settlement discussions that Bank One had with Beneficial. The October 2000 conversation involved a representative of Bank One reporting to a representative of Santa Barbara the substance of settlement discussions with Beneficial. The February 2001 conversation involved representatives of Republic in Santa Barbara

concerning litigation strategy. Defendants acknowledge that in each of these conversations, the subject of cross-collection agreements between various of the defendants and Household was addressed. Beneficial asserts that none of these conversations is privileged, because (1) defendants have failed to establish that there is a joint defense agreement among them; (2) even if there is a joint defense agreement, the conversations at issue do not fall within the parameters of a joint defense privilege; and (3) in all events, discussions about settlement are not privileged.

With respect to existence of a joint defense agreement, the parties needlessly debate the significance of the defendants' failure to produce the written joint defense agreement they say exists. Beneficial asks that a "negative inference" be drawn from the failure to produce the written joint defense agreement (Pl.'s CCA Motion at 10), without explaining what that inference should be. The defendants, for their part, say that they did not produce the joint defense agreement to Beneficial "in part" because Beneficial asserted that disclosure might constitute a broad waiver of privilege (Defs.' CCA Joint Response, at 13 n.3). Rather than indulge in speculation, the Court has asked for and received the Joint Defense Agreement for an *in camera* inspection. That document confirms what defendants have asserted, and what one would expect from reviewing plaintiff's allegations and the defenses each of the defendants has raised: that there exists a common interest among the defendants in the defense of the infringement claims asserted by Beneficial, such that the common interest privilege can apply to the defendants in this case.

However, the fact that the defendants have a common interest in the defense of this case does not automatically render every communication between them subject to the common interest privilege. As this Court explained in *IBJ Whitehall*, the common interest rule covers communications between non-lawyers of multiple parties with a common interest, but only if (1) one

14

party is seeking confidential information from the other on behalf of an attorney; (2) one party is relaying confidential information to the other on behalf of an attorney; and (3) the parties are communicating work-product that is related to the litigation. *IBJ Whitehall*, 1999 WL 617842, at * 3. Neither the descriptions of the June and October 2000 conversations, nor the documents relating to those conversations, establishes these requisites for application of the common interest privilege. There is no evidence that in these conversations one party was seeking confidential information from the others on behalf of its attorney, or relaying confidential information to the others on behalf of its attorney.

On the other hand, the description of the February 2001 conversation set forth in defendants' brief (Defs.' Joint Response at 10) on its face indicates that the discussions between business people from Republic and Santa Barbara conveyed confidential communications from their respective attorneys, and would fall within the common interest privilege. The Republic interrogatory response sets forth this information, but the Santa Barbara interrogatory response does not. Beneficial complains that the summary description of this conversation is inadequate, and that defendants should have to describe in detail, and on oath, the substance of the discussions so that the Court may evaluate them *in camera* (Pl.'s Motion at 11 n.4). However, plaintiff has offered no basis for the Court to question the description given on oath in Republic's interrogatory. Certainly, plaintiff is willing to accept defendants' representation concerning the substance of conversations when defendants concede that the conversations do not involve litigation strategy. The Court agrees that Beneficial is entitled to have Santa Barbara attest on oath to this description; but no greater detail than what appears in the brief is required.

Although the June and October 2000 conversations do not qualify for the common interest privilege, there remains the question of what information from those discussions must be produced. It appears from the description of those conversations, and from the documents relating to the June 2000 conversation, that the principle topic of discussion was settlement, with the cross-collection agreements being raised in connection with those conversations. The Court finds that defendants need not disclose more about the details of those conversations for the following reasons.

*First*, as a threshold matter, we reject plaintiff's assertion that discussions about *settlement* are distinct from any common *litigation* interest (Pl.'s Mot. at 12). The cases cited by plaintiff do not make this distinction. *See, e.g., Schachen v. American Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 191-92 (N.D. Ill. 1985) (litigation underway but not permitting disclosure of confidential information between attorney and client; no distinction made between settlement and litigation interests); *Gen-Probe Inc. v. Amoco Corp.*, No. 94 C 5069, 1996 WL 264707, * 3 (N.D. Ill., May 16, 1996) (no distinctions made between settlement versus litigation interests for purposes of common interest doctrine); *Allendale Mut. Inc. Co. v. Bull Data Systems*, 152 F.R.D. 132, 140 (N.D. Ill. 1993) (distinction made was between legal and non-legal interests; settlement interests were not discussed). Indeed, not all of these cases deal with efforts to obtain discovery into discussions about settlement by defendants with a common interest after a lawsuit had been commenced. *See, e.g., IBJ Whitehall*, 1999 WL 617842, at * 4. Moreover, the Court finds plaintiff's asserted distinction unpersuasive. Once a litigation is commenced, it typically is terminated in one of two ways: by a judicial ruling, or by a settlement. A settlement by one defendant (perhaps through a "divide and conquer" strategy advanced by a plaintiff) well may affect the litigation positions and interests of the other defendants. To say that defendants are acting out of a common litigation interest when they

16

discuss one means of terminating a lawsuit (trying the case on the merits) but not the other (settling the case) would adopt a myopic view of the realities of the litigation process. Exchanging information about settlement positions among defendants with a common interest is, in the Court's view, often part and parcel of evaluating and assessing litigation interests, and can be within the scope of defendants' common interest. The Court therefore rejects plaintiff's assertion that discussions about settlement cannot relate to the common litigation interest of defendants.

Further, the Court agrees with the authorities that generally find it unwise to allow one party to obtain discovery about the private settlement positions of opposing parties in ongoing litigation. *See, e.g., Mars Steel Corp. v. Continental Illinois National Bank and Trust Company of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987) (upholding district court's denial of discovery into settlement discussions, stating that "[d]iscovery of settlement negotiations in ongoing litigation is unusual because it would give a party information about an opponent's strategy"). While settlement discussions between principals of two defendants allied by a common interest are not "privileged," the reality is that those defendants are "allies . . . with respect to settling." *National Union Fire Insurance Co. v. Continental Illinois Group*, Nos. 85 C 7080, 85 C 7081, 1987 WL 18933, * 2 (N.D. Ill., Oct. 22, 1987). As a result, business representatives from the defendants in this case concerning settlement are, functionally, no different than discussions among business people at Beneficial concerning settlement. Beneficial does not disagree with defendants' assertion that Beneficial would consider such internal discussions protected from disclosure (Defs.' Cross-Collection Joint Response at 6-7), and the Court agrees that they would be protected – even if the discussions did not squarely

fall within a privilege. The Court will give no less protection to the same type of private discussions concerning settlement among the defendants in this case with the joint interest.[2]

*Second*, even if the Court were inclined to allow discovery of settlement discussions, the particular interrogatories in question do not seek that information. Those interrogatories ask for conversations concerning cross-collection agreements. And while plaintiff suggested otherwise in its motion (Pl.'s Cross-Collection Motion, at 5-6), in its reply plaintiff admits that its discovery requests seek information "concerning the cross-collection agreements, not settlement" (Pl.'s Cross-Collection Reply, at 7). The fact that the subject of cross-collection agreements arose during these conversations does not entitle plaintiff to have access to the discussions concerning settlement positions.

*Third*, in assessing discoverability, the Court considers whether the requested information is relevant to a claim or defense in the case. In this case, plaintiff asserts that the cross-collection agreements are relevant because they form a fundamental basis of the equitable estoppel defenses alleged by each of the defendants (Pl.'s Cross-Collection Motion, at 2). The Court agrees. However, upon reviewing carefully the briefs and the arguments presented, the Court concludes that plaintiff stretches the point too far by arguing that this means that all materials relating to the cross-collection agreements, even those created up to present day, are discoverable. The Court's review of the descriptions of the June and October 2000 conversations, and the notes concerning the June 2000

---

[2]The authorities cited by plaintiff in support of its position that settlement materials are generally discoverable are inapposite. In *Starbucks*, the settlement documents plaintiff sought from the defendant already had been provided by the defendant to plaintiff during settlement negotiations. 1998 WL 781120, at * 5. In both *ChannelMark Corp.* and *Schottenstein*, the documents at issue did not involve settlement positions in the ongoing litigation, but rather settlements reached by a party in separate litigation. *ChannelMark Corp. v. Destination Products Intern., Inc.*, No. 99 C 214, 2000 WL 968818. *Household Commercial Finance Services, Inc. v. Schottenstein I*, No. 90 C 270, 1991 WL 222069, * 1 (N.D. Ill., Oct. 24, 1991).

conversation, do not indicate any discussions concerning the cross-collection agreements with Household that bear on defendants' assertion of those agreements as a basis for the equitable estoppel defense. Thus, for all of these reasons, the Court believes that neither the documents, nor any further description of those conversations, need be produced at this time.[3]

## B.

A number of the conversations logged in Response Interrogatory No. 13 took place between trial counsel for the various defendants. Beneficial raises essentially two arguments in an effort to require disclosure of the substance of those conversations, neither of which the Court finds persuasive.

*First*, Beneficial argues that these defendants have not established a basis for the common interest doctrine to apply. For the reasons explained above, the Court disagrees. The nature of the claims raised by Beneficial against all defendants, the common interest these defendants have in addressing those claims, the absence of any identified conflict among the defendants in their positions with respect to the case, and the fact that their pursuit of a common defense is memorialized in a written joint defense agreement, all show that the common interest doctrine certainly may apply here.

*Second*, Beneficial argues that the defendants have failed to sufficiently substantiate that the conversations involved work-product (Pl.'s Cross-Collection Motion at 7; Pl.'s Cross-Collection Reply at 10). Taking together the interrogatory responses and the explanations in defendants' joint

---

[3]We note that plaintiff has the identity of the individuals who were involved in the conversations, and this order does not foreclose plaintiff's counsel from asking those individuals during deposition about non-privileged conversations they had concerning cross-collection agreements with Household, and what reliance they placed on those agreements in establishing or continuing to operate their own RAL or RAC programs.

brief, the Court finds that there is sufficient information provided for the Court to determine that the conversations fall within the common interest doctrine. The conversations at issue are as follows.

*October 9, 2000*: The amended responses to Interrogatory No. 13 indicate that counsel for Bank One and Santa Barbara discussed cross-collection agreements on that date. The interrogatory responses do not indicate what work-product was discussed, but defendants' brief expands on that description by indicating that the discussions "were in the context of coordinating trial and discovery scheduling," and any discussion of cross-collection agreements was concerning past agreements as they "may impact available defenses" (Defs.' Cross-Collection Joint Mem. at 11). This kind of conversation between attorneys representing defendants with a common interest is protected. However, the Court will require Santa Barbara and Bank One to amend their respective interrogatory responses to provide, on oath, the level of detail set forth in the brief.

*October 31, 2000*: The interrogatory answers from all defendants indicate that a conversation took place on this date among trial counsel representing all defendants. The interrogatory responses for Republic and River City state that the conversation involved "the litigation and joint defense litigation strategy" in the case, and that cross-collection agreements also were discussed; Bank One's and Santa Barbara's interrogatory responses do not provide this level of detail. But in their joint brief, the defendants elaborate that this meeting took place in the courthouse cafeteria, and involved the discussion of the case in general terms, and that cross-collection agreements were discussed only for the purpose of distinguishing them from other types of agreements in the industry, and that "neither specific terms of any past or future agreements, nor any future course of action, were discussed" (Defs.' Cross-Collection Joint Mem., at 11). Once again, the information provided in the interrogatory answers and the brief satisfy the Court that these conversations fall within the common

20

interest rule; however, the Court will require all defendants to amend their respective interrogatory responses to include the level of detail set forth in the brief concerning the October 31 conversation.

*Late January 2001*: Santa Barbara's interrogatory response indicates that sometime during the last week of January 2001, Santa Barbara's trial counsel had a conversation with Bank One's trial counsel (although Bank One's interrogatory response does not list this conversation). The interrogatory response by Santa Barbara does not specifically state that trial strategy or preparation was discussed (although the interrogatory says that the conversation was of the same type as in October 2000, which in the brief the defendants say involved scheduling trial strategy and legal defenses). Accordingly, the Court will require Santa Barbara to amend this interrogatory response to provide a statement, on oath, that the conversation involved discussion of scheduling, trial strategy and legal defenses.

*February 7 and 21, 2001*: The defendants indicate that on February 7 and February 21, 2001, after court appearances, discussions took place among trial counsel for all defendants, in which cross-collection agreements were discussed. The Republic and River City interrogatory responses specifically state that the discussion concerned the litigation and joint defense strategy; the Santa Barbara and Bank One interrogatory responses do not so state. But in their joint brief, the defendants state that in the conversations following these court hearings, the defendants discussed matters of common litigation interest, such as the invalidity of patents. The Court will require all defendants to amend their interrogatories, to provide specific statements that trial strategy or trial preparation was discussed at these meetings, and to conform with the level of detail provided in the brief.

*Other Conversations in February 2000*: Defense counsel all indicate that there were other conversations among all or some of them during February 2001. Republic and River City indicate

21

in their interrogatory responses that these conversations involved "litigation and joint defense strategy." The Bank One and Santa Barbara interrogatory responses indicates that such conversations occurred during that period, and that cross-collections were discussed during those conversations "solely for the purpose of preserving privilege while compiling responsive answers to interrogatories 13 and 14." The Court finds that these descriptions are sufficient, without further elaboration, to establish the common interest privilege.[4]

As is clear from the foregoing discussion, the Court will require the defendants to amend their interrogatory responses to provide, on oath, a statement that the discussions at issue involved trial preparation, trial strategy or other work product that falls within the common interest rule. But the Court will not accept plaintiff's invitation to go much farther, and to require each trial counsel to provide an affidavit setting forth a detailed explanation of the substance of the conversations (Pl.'s Cross-Collection Motion, at 11 n. 4). Certainly, the plaintiff is not entitled to see that detailed explanation, since to do so would result in eviscerating any privilege in order to verify the one that exists. And while it is the Court's province and responsibility to determine questions of privilege, the Court believes it prudent to proceed with caution in requiring trial counsel to prepare memoranda of their conversations, for the purpose of logging them and submitting them for Court review. Typically, the Court should not be privy to a party's private trial strategy, any more than should the adverse party. Here, the Court does not find a sufficient basis to believe it appropriate to require the trial counsel for the defendants to tell the Court, in chapter and verse, the nature of their joint defense discussions concerning cross-collection agreements. Moreover, to adopt plaintiff's proposal would

---

[4]Plaintiff contends that the defendant were required to log or produce "materials generated by counsel in responding to the interrogatories" (Pl.'s Cross-Collection Motion, at 13-14). The Court disagrees.

lead to a never ending cycle requiring logging and affidavits of all discussion among defense counsel or among the respective defendants. The Court declines to pursue such a wasteful, intrusive and unnecessary path.

## C.

Finally, the Court addresses the remaining arguments made by Beneficial on the cross-collection agreements.

*First*, Beneficial says that the defendants improperly failed to log discussions concerning cross-collection agreements that may exist between and among the various defendants (Pl.'s Cross-Collection Motion, at 13). Whether that information is discoverable the Court need not consider at this time, because plaintiff's interrogatory does not ask for it. The interrogatory specifically asks for information concerning conversations concerning cross-collection agreements between any of the defendants and Beneficial – not collection agreements between the defendants. It is not surprising that the request was framed in terms of the conversations concerning collection agreements between defendants and Beneficial, because it is those cross-collection agreements (and not any such agreements between various defendants) that are asserted as a basis of the defendants' equitable estoppel defenses. The Court will not rewrite the interrogatory to seek information that is not requested by its plain terms.

*Second*, plaintiff argues that the defendants have not logged conversations if they did not "specifically relate" to discussions concerning cross-collection agreements with Beneficial-related entities (Pl.'s Cross-Collection Motion, at 13). The defendants' description of the conversations they have logged, however, is inconsistent with that argument. According to the defendants, they have

logged conversations about cross-collection agreements, even if they came up peripherally in discussions concerning other matters. Plaintiff has provided no reason why the Court should doubt those descriptions.

*Third*, plaintiff argues that certain defendants have not logged conversations that took place after the filing of this lawsuit (Pl.'s Cross-Collection Motion, at 13). Once again, both the interrogatory responses, which log conversations that took place *exclusively* after the lawsuit was initiated, and the description of those conversations in the brief, belies this assertion.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel (doc. # 104-1) is granted in part and denied in part. The documents to be produced pursuant to this ruling on the motion to compel shall be produced on or before May 21, 2001.

Plaintiff's motion to compel discovery relating to cross-collection (doc. # 106-1) is granted in part, to the extent that the Court will require further supplementation to Interrogatory No. 13. The supplemental responses shall be served on or before May 21, 2001. In all other respects, the motion to compel discovery relating to cross-collection is denied.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: May 8, 2001

24